```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                   FORT MYERS DIVISION
```

JAMES R. BARNES,

    Petitioner,

v.                                       Case No:2:11-cv-362-FtM29CM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

    Respondents.

_____/

## OPINION AND ORDER

### I. Background

Petitioner James R. Barnes initiated this action, with counsel, by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #1, Petition) and supporting memorandum of law (Doc. #2, Memorandum) challenging his June 21, 2002 judgment of conviction after a jury trial of carjacking and giving a false name entered in the Twentieth Judicial Circuit Court, Lee County, Florida (case number 01-CF-3298A).

The instant Petition raises one ground for relief: whether defense counsel rendered ineffective assistance of counsel by failing to sufficiently investigate and present a defense that the offense was in fact a drug deal that went awry, not an attempted carjacking. Petition at 5.

Respondent[1] filed a Response opposing the Petition (Doc. #12, Response) and attached supporting exhibits (Doc. #13, Resp. Exhs. 001-046) consisting of the record on direct appeal and postconviction pleadings.[2] Respondent argues that the Petition fails to satisfy 28 U.S.C. § 2254 (d). Petitioner filed a Reply (Doc. #14, Reply) and attached as an exhibit (Doc. #15, Pet. Exh. A) a copy of the trial transcript. This matter is ripe for review.

---

[1]Petitioner names the Florida Attorney General, and Secretary Department of Corrections as Respondents. Petition at 1. Rule 2(a) of the Rules Governing Section 2254 Cases in United States District Courts (hereinafter the "Rules") provides that applicants in "present custody" seeking habeas relief should name "the state officer having custody of the applicant as respondent." The Supreme Court has made clear that there "is generally only one proper respondent to a given prisoner's habeas petition." Rumsfield v. Padilla, 542 U.S. 426, 435 (2004). This is "'the person with the ability to produce the prisoner's body before the habeas court.'" Id. at 435-436. When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the attorney general or some other remote supervisory official." Id. at 436 (citations to other authorities omitted). Alternatively, the chief officer in charge of the state penal institution is also recognized as the proper named respondent. Rule 2(a), Sanders v. Bennet, 148 F.2d 19 (D.C. Cir. 1945). In Florida, the proper Respondent in this action is the Secretary of the Florida Department of Corrections. Thus, the Florida Attorney General will be dismissed from this action.

[2]Respondent concedes that the Petition is timely filed, see Response at 9-10, and does not raise any exhaustion or procedural default concerns. See id. The Court agrees the Petition is timely filed, and exhausted to the extent Petitioner raised the claim as Ground A in his Rule 3.850 motion, Resp. Exh. 40, and appealed the adverse result thereafter, Resp. Exh. 41. The Court will proceed to analyze the claim under § 2254(d).

**II.  Applicable § 2254 Law**

**A. Deferential Review Required By AEDPA**

Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  See  Abdul-Kabir v. Quarterman, 550 U.S. 233, 246 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001).  Consequently, post-AEDPA law governs this action.  Abdul-Kabir, 550 U.S. at 246; Penry, 532 U.S. at 792; Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007).  Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  White v. Woodall, 134 S. Ct. 1697, 1702 (2014).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The unreasonable application inquiry "requires the state court decision to be more than incorrect or

erroneous," rather, it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18; Ward, 592 F.3d at 1155. Petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 786-787 (2011)).

Finally, the Supreme Court has stated that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (dictum). When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see, e.g., Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013); Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

**B.   Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. Newland, 527 F.3d at 1184. In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688; see also Bobby v. Van Hook, 558 U.S. 4, 8 (2009); Cullen v. Pinholster, 131 S. Ct. at 1403 (2011).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." Bobby Van Hook, 558 U.S. at 9 (internal quotations and citations omitted). It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. Id. A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

"Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Mendoza v. Sec'y, Fla. Dep't of Corr., ____ F.3d _____, 2014 WL

3747685, *20 (11th Cir. July 31, 2014)(quoting Richter, 131 S. Ct. at 788). "Where the highly deferential standards mandated by Strickland and AEDPA both apply, they combine to produce a doubly deferential form of review that asks only whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. (quoting Downs v. Sec'y, Fla. Dep't of Corr., 738 F.3d 240, 258 (11th Cir. 2013)). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." Id. (citing Knowles, 556 U.S. at 123). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state court decision denying the claim. Id. (citing Richter, 131 S. Ct. at 788).

### III. Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. Schriro, 550 U.S. at 474; Turner v.

Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

Petitioner argues that trial counsel rendered ineffective assistance of counsel when counsel failed to sufficiently investigate and present a defense that the offense was in fact a drug deal that went awry, not an attempted carjacking. Petition at 5. Petitioner argues that he told his defense attorney that the incident was not an attempted carjacking, but instead an altercation over a botched drug deal. Id. Petitioner further argues that he told his defense attorney that when he was arrested, Deputy Bushong seized pills from him. Id. The fact that Petitioner had pills on him supported this theory of defense. Defense counsel, however, neither further developed the issue concerning the pills found on Petitioner, nor articulated the theory of the defense that the episode was really a drug deal gone awry. Id.

In Response, Respondent refers the Court to the postconviction court's order denying Petitioner relief on this claim (raised as Claim A in the Rule 3.850 motion). Response at 13. Respondent argues that Petitioner cannot establish the deficiency prong of Strickland because there was no reason for defense counsel to investigate any alleged drug deal because the seized pills were not a controlled substance. Id. at 14. Further, assuming *arguendo* Petitioner could establish defense

counsel's deficient performance, Respondent argues Petitioner has not established the prejudice prong of Strickland because Petitioner cannot show that the outcome of the case would have been any different had defense counsel used the drug deal theory of defense because other evidence was introduced that supported Petitioner's carjacking conviction. Id. at 15.

In Reply, Petitioner argues that the postconviction court's decision was unreasonable because no report was ever introduced into evidence concerning the test results of the pills during the Richardson hearing. Reply at 6. Instead, the postconviction court relied on the prosecutor's hearsay statement during the hearing. Id. Petitioner points to other problems that existed with the collection of the pills. Id. at 7.

The Court finds Petitioner has not shown that the postconviction court's decision was contrary to or resulted in an unreasonable application of Strickland; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence. In denying Petitioner's Rule 3.850 claim, the postconviction court found as follows:

> The State indicated that the FDLE test results showed that the pills were not a controlled substance. This refutes Defendant's contention that the pills were Valium. Mr. Underwood testified that he was driving behind the victim's car, and saw the two passengers beating the victim, who was driving, and attempt to force him out of the vehicle. Mr. Beckler, the victim, testified that he offered to give Defendant and his co-defendant a ride

> to a hotel because their van broke down, that Defendant threatened to shoot him if he did not get out of the car, Defendant pushed him out of the vehicle, and that the men beat him when he fought to get his keys. Both Defendant and the co-defendant gave statements at the scene in which they stated the victim "wigged out" on them and started swinging at them and threatening them for no reason. Notably, neither Defendant nor co-defendant mentioned a drug deal gone bad in their statements. Rather, their statements resemble the victim's testimony up until the point where they indicate the victim attacked them for no reason while he was driving them to a hotel. Detective Bushong testified that it would have made no difference as far as the carjacking statute if there were drugs involved, and evidence of drugs would not have cast doubt on the victim's story.
>
> Further, even if counsel was somehow deficient, Defendant cannot establish prejudice. Even if the pills were in evidence to support the drug deal gone bad story Defendant now maintains, there is no reasonable probability of a different outcome, since there was sufficient other evidence, as stated above, for the jury to find Defendant and the co-defendant threatened the victim, beat him, and attempted to force him out of his vehicle. Defendant failed to allege any facts that, if true, satisfied either prong of Strickland.

Resp. Exh. 040.

The postconviction court's order addressed both prongs of the Strickland test. First, the postconviction court found defense counsel's actions-- failure to further develop information about the pills and tangentially the drug deal gone awry line of defense-- did not constitute deficient performance based on the representation of the prosecution that an FDLE report confirmed

that the pills found on Petitioner were not Valium. Petitioner argues that the postconviction court's decision was unreasonable because no report concerning the outcome of the FDLE test on the pills was ever introduced into evidence. Second, the postconviction court found Petitioner could not establish prejudice because there was sufficient evidence to support Petitioner's conviction for carjacking based on testimony from the victim, a witness to the incident that called police, and the responding police officers.

The postconviction court's determination as to deficient performance was not unreasonable. Defense counsel did not develop the drug deal gone awry theory of defense. Defense counsel instead opted for a defense strategy that coincided with the recorded statements both Petitioner and his co-defendant voluntarily gave authorities, which were introduced at trial.[3] The strategic

---

[3]As summarized in Petitioner's memoranda: Petitioner said he was going to Key West with a man named Larry Koonce. (T. 209-201.) Petitioner and Koonce's van broke down on Exit 25 or Exit 26. (T. 210.) They left the van at a RaceTrac and got a hotel room at the Tides Motel the night before. (T. 210.) Petitioner said that he went to a strip club near the hotel and when he came back, all of his clothes and "all that type of stuff" was gone from the hotel room. (T. 210.) Petitioner said that Koonce called a colleague from pharmacy school. (T. 210.) Petitioner said that he and Koonce met Mr. Burns earlier in the day (T. 210). Petitioner said that he and Burns split up with Koonce earlier in the day and couldn't get back in contact with him. As a result, they went back to the van to wait for Koonce. (T. 210.)

Petitioner said that he asked "this kid (the victim-Beckler) to give him a ride to the van at RaceTrac (T. 212.) Petitioner further said that when they arrived at the van, the window was

choices made by defense counsel were reasonable and constitutionally adequate given the circumstances. Defense counsel was aware of the recorded statements from Petitioner and his co-defendant. These recorded statements, i.e. the victim started hitting Petitioner and the co-defendant for no reason while driving them to the hotel, were inconsistent with the proposed theory of defense *sub judice* that the offense was really a drug deal gone awry. See generally Johnson v. Alabama, 256 F.3d 1156, 1178 (11th Cir. 2011).

Nevertheless, the Court need not address the performance prong when a petitioner has not shown the requisite prejudice under Strickland. Wright v. Sec'y Fla. Dep't of Corr., ___ F.3d ___, 2014 WL 3809389, *22 (11th Cir. Aug. 4, 2014)(citing Bishop v. Warden, GDCP, 726 F.3d 1243, 1254 (11th Cir. 2013)("[A] court need not determine whether counsel's performance was deficient before

---

smashed out and things were missing from the van. (T. 212.). Petitioner said that he then asked the victim to give him a ride to a motel where he could get a room. (T. 212-213.) At that point, Petitioner said that Beckler "just wigged out, started swinging on me." (T. 213.) Petitioner denied trying to take the victim's vehicle from him. (T. 214.)

    Ronald Burns' (the co-defendant) statement was also played to the jury. Burns said that he was at the RaceTrac at Exit 26 of Interstate 75. (T 220.) Burns said that he window of the van was broken out. (T. 220.) The victim gave Burns and Petitioner a ride. The victim was supposed to be taking them to a hotel. (T. 220.) Burns said that as they were driving, the victim started "wigging out on [Petitioner] and me." Burns said that the victim started throwing punches at Petitioner and him. (T. 220.) Memoranda at 16-17.

examining the prejudice suffered by the defendant as a result of the alleged deficiencies." (quotation marks omitted), petition for cert. filed, No. 13-1345 (U.S. Mar. 3, 2014); Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010)("[A] court need not address the performance prong if the petitioner cannot meet the prejudice prong…")). As set forth above, to find prejudice, the Court would have to determine that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

The result of the trial was reliable because there was sufficient evidence introduced to support the carjacking and false name convictions. A witness, who was driving behind the vehicle on his return from training at a fire station, testified that he called 911 because "all hell broke loose inside the car" in front of him. Exh. 46 at 32. The witness testified that the driver got thrown out of the car on his back. Id. After officers arrived, the witness saw the driver of the car had a bloodied mouth. Id. at 38. The witness identified Petitioner as one of the two people who were in the car beating the driver. Id. at 39.

The victim testified that Petitioner and the co-defendant approached him at the RaceTrac gas station and asked for a ride to their vehicle that was broken down. Id. at 53. The victim agreed

to help them.  Id.  During the ride, Petitioner put the gear shift into park, turned off the ignition, and pushed him out of the car at Hart Road and Bayshore.  Id. at 51-69.  The victim testified that Petitioner told him, "I'm going to shoot you if you don't get out."  Id.  When the victim saw there was no gum, he fought his way back into the car.  Id.  While the victim was trying to regain control of his vehicle, co-defendant Burns, who was in the backseat, hit the victim over the head with a beer bottle and caused injury to the victim's lips.  Id.  In light of the evidence, it was reasonable for the postconviction court to determine that the outcome of trial would not have been different had counsel raised this alternative defense theory.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The Florida Attorney General is **DISMISSED** as a named Respondent.

2. The Petition for Writ of Habeas Corpus is **DENIED** for the reasons discussed herein.

3. The **Clerk of Court** shall terminate any pending motions, enter judgment accordingly, and close this case.

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability. Id. "A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). The issues raised by Petitioner do not satisfy these standards. Further, because Petitioner is not entitled to a certificate of appealability, he is not entitled to proceed *in forma pauperis* on appeal.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___19th___ day of August, 2014.

*[Signature: John E. Steele]*
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

```
SA: alr
Copies: All Parties of Record
```